## ·· EXCELSIOR STEEL FURNACE CO. v. WILLIAMSON HEATER CO.

'(Circuit Court of Appeals, Sixth Circuit.' November 3, 1920. On Petition for Rehearing, January 14, 1921.)

### No. 3250.

**1. Injunction ☞56—Master and servant ☞60—Defendant's employment of former servant of plaintiff held not illegal.**

Where the evidence did not show that a former servant of plaintiff had been employed in a confidential capacity, or had agreed not to divulge plaintiff's secret, or that plaintiff was taking any special precautions to protect the secrets of its machines and processes, the subsequent employment of that servant by defendant to construct similar machines for defendant is not illegal.

**2. Patents ☞61—Prior application deemed prior art.**

An application for a patent, filed prior to the time of filing the application for the patent in suit, is to be considered a part of the prior art, in the absence of any evidence to the contrary, though the patent on the prior application was issued after the patent in suit, and no interference was declared between them. ·

**3. Patents ☞328—729,964, claims 1, 3, 8–10, for machine for cutting irregular shapes of sheet metal, held invalid, but claims 2, 4–7, held valid.**

·The Scherer patent, No. 729,964, claims 1, 3, 8–10, for a machine for cutting irregular shapes of sheet metal, held invalid, in view of the prior art; but claims 2, 4–7, which included as an element a secondary guiding means not found in the prior art, held valid.

**4. Patents ☞328—729,964, for a machine for cutting irregular shapes of sheet metal, held infringed by one of defendant's machines, but not by the other.**

· The Scherer patent, No. 729,964, for a machine for cutting irregular shapes of sheet metal, held infringed by defendant's machine, as constructed by a former·employé of plaintiff, but not by the machine constructed by defendant according to the specification in a patent which was part of the prior art.

### On Petition for Rehearing.

**5. Patents ☞156—Costs on appeal not affected by failure to file disclaimer before suit.**

Failure to file, before suit for infringement is begun, disclaimer as to invalid claims of patent in suit, affects only the costs in the trial court, and has no relation to costs in the Circuit Court of Appeals (Rev. St. § 973 [U. S. Comp. St. § 1614]).

**6. Patents ☞153—Disclaimer entered after decision on appeal and expiration of patent held timely.**

Under Rev. St. §§ 4917, 4922 (U. S. Comp. St. §§ 9462, 9468), authorizing suit for infringement by patentee whose patent contains too broad claims, if patentee has not unreasonably neglected or delayed to enter a disclaimer where complainant in suit for infringement of patent contends that claims of patent in suit are valid, but District Court and ··· Circuit Court of Appeals hold otherwise, it is not too late to enter disclaimer after decision on appeal, though patent has then expired.,

**7. Patents ☞317—No injunction on expired patent.**

An injunction cannot issue in suit for infringement of patent, after expiration of the patent.

Appeal from the District Court of the United States, for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge. ·

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by the Excelsior Steel Furnace Company against the Williamson Heater Company for infringement of patents, unfair competition, and fraudulent acquisition of trade secrets. From a decree dismissing the bill, plaintiff appeals. Decree reversed, in so far as it held one patent void.

Benjamin T. Roodhouse, of Chicago, Ill. (Benjamin, Roodhouse & Lundy, Benj. T. Roodhouse, and John A. Brown, all of Chicago, Ill., and Wm. F. Madden, of Cincinnati, Ohio, on the brief), for appellant.

Wm. R. Wood, of Cincinnati, Ohio (Wm. R. Wood, of Cincinnati, Ohio, and Wood & Wood, of Athens, Ohio, on the brief), for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge. The appellant, the Excelsior Steel Furnace Company, whom we will hereafter designate as the plaintiff, sued the appellee, the Williamson Heater Company, a corporation, whom we will hereafter designate as the defendant, in the District Court on a bill charging infringement of two patents, unfair competition, conspiracy to infringe patents, fraudulent acquisition of secrets having to do with the mechanism, dimensions, and method of operating the patented machines and all other such machines not patented, and conspiracy to obtain such information. From the decree of the District Court, dismissing the bill, plaintiff appeals.

[1] Although the question occupies a great deal of the record and argument in this case, we do not find it difficult to dispose of that part of the bill which is predicated upon the alleged piracy, in several forms, by the defendant of plaintiff's business methods. In a very large measure the charge centers upon the employment by the defendant of one Holub, a workman from plaintiff's factory, through whom the defendant is alleged to have introduced into its factory practices and to have constructed machines closely following those used in plaintiff's factory. Unless Holub's engagement by defendant was actionably reprehensible under settled principles of equity, plaintiff has no case on any of the grounds involving piracy. Without venturing an opinion upon the ethics of the situation, we are satisfied, with respect to this phase of the case, to leave it upon the judgment and opinion of the learned District Judge.

The case on its facts does not rise to a dignity which would invoke the rule of such cases as Herold v. Herold China & Pottery Company (decided by this court) 257 Fed. 911, 169 C. C. A. 61. The practices and machines, knowledge of which defendant may have gained through its employing of Holub, were not in the nature of trade confidences. Some of the important practices which it is charged the defendant introduced into its factory operations through unfair use of Holub were disclosures made by plaintiff through the patent office. All of those alleged to have been fraudulently appropriated by defendant were usages more or less open in plaintiff's factory. At least they were not restricted to the activities of confidential employés. They were secret only to the extent that many manufacturers are accustomed to exclude the general public from an inspection of their methods. There is no

proof here at all of any contractual relation in Holub which involved an agreement by him not to disclose these matters, as in Nulomoline Co. v. Stromeyer, 249 Fed. 597, 161 C. C. A. 523. The court below also rightfully found that the general charge of unfair competition was not sustained.

[2] Of the patents sued upon, plaintiff seems to have abandoned its case as to that known as Scherer, No. 728,020, but presses its demand for reversal of the decree below and for relief against the alleged infringement of its rights under Scherer, No. 729,964, filed December 18, 1902, and granted June 2, 1903, machine for cutting sheet metal. The court below held that this patent, which is owned by the plaintiff as assignee, is void. The alleged invention is claimed to be an improvement in machines for cutting sheet metal, with the main object to be provided that sheet metal may be readily cut in any pattern through a novel construction, which in the language of the specification is "particularly adapted to the cutting of sheet metal in long, irregular curves"; the inventor saying that it is used "principally for cutting sheet metal in proper shape for sheet metal elbows of large dimensions."

Of the anticipations in the prior art cited, the one principally depended upon as specially important is that to Chambers and Bullard, No. 730,874, allowed June 16, 1903, two weeks after the Scherer allowance. The application for this grant was filed June 6, 1902, or six months prior to the filing of Scherer's application. The two applications were in the same classification and were for the same general class of improvements. They pended in the Patent Office at the same time, but seemed not to have been brought into contact with each other. Of course, as far as they are seen to interfere as to valid invention, the Chambers and Bullard patent, having the earlier application, has priority; the record before us indicating nothing to the contrary. As the case is presented to us, and as we also view it, so far as Scherer has avoided the anticipation of Chambers and Bullard, he is not in conflict with the other references, and, on the record, we are to read the Scherer grant as in a field still further restricted by Chambers and Bullard.

The grant under consideration has 10 claims. The problem with which it deals is to provide cutting rollers to follow a curved track, which determines the pattern, to the end that the cut product, when properly edged and rounded, may make suitable sections of an elbow to such sheet metal pipes as are used in hot-air furnaces. The machine cuts these sections so successfully that, when they are edged and connected up, elbows and turns in the completed pipe are readily produced in varying angles and directions.

The details of the Chambers and Bullard machine are a suitably supported table, in front of which is a shelf for a second table supported by brackets; a movable pattern plate, clamped through slots in the table, for guides or tracks which form the pattern, these tracks being arranged in relation to each other to outline the cut to be made; clamps controlled by threaded rods, supported on the under side of the table by bearings; a cutting device, provided with cutting rolls and

suitable means for revolving the same; a wheel or roller to support the cutting machine, which travels on the supplementary table or shelf; rollers to further support the cutting machine, and which travel on the guides or tracks; other guide rollers suitably provided, which guide and hold the cutting machine in a position while it is being operated that it does not tend to bind on the tracks, or to displace the cutting shears or rolls, or to draw the metal operated on.

[3] In most particulars the alleged invention in issue here is similarly or equivalently equipped, and, only as it may be inventably distinguished in any essential detail from the reference in question, may the Scherer grant be sustained. We are of the opinion that such a distinction should be made and the grant upheld in some measure as a patentable improvement over Chambers and Bullard.

The special distinction between the two machines is in the manner of adjusting the cutter head to effect a cut which definitely follows the pattern. In Chambers and Bullard the cutter head is rigid on the carriage, but Scherer mounts it on a frame which is adjusted slidingly on the carriage. The effect is to permit a simultaneous movement of the cutting mechanism longitudinally as the carriage follows the track and radially of the curve of the track. This keeps the cutter always directly over the curving track, a result secured from disadjustment by vertical rollers, which are attached to the sliding cutter frame and which span the track.

This is, we think, a patentable improvement. The Chambers and Bullard device was designed for the cutting of thin metal plates or streaks to form the skin of a boat. For that purpose only an approximate identity in curves between the pieces cut and the pattern is necessary, because in using the section or streaks in building up the boat's skin overlapping was employed, and even fairly substantial departures from the pattern of the curves are innoxious. In building up an elbow of a large pipe, however, slight deviations from the curve which is theoretically necessary may be fatal to success.

Much is argued as to the lack of clear disclosure in the specification and drawings, and it is even insisted that there was a purposeful withholding of description effective to advise one skilled in the art of the alleged invention. This criticism does not impress this court. There is nothing intricate or obscure in the idea, and while the drawings might be clearer, and possibly the description also, there certainly is no valid ground for predicating purposeful obscurity in the defects of either, and little to create perplexing indefiniteness.

Of the ten claims, 1, 3, and 10 appeal to the court to be but variant expressions of the same combination, and to read, each, upon Chambers and Bullard. Claim 1, which is typical of the three, reads:

"In combination with a supporting table, carrying an adjustable and removable pattern and means for holding the metal in place, of a carriage supporting a cutting mechanism guided in its movement by the pattern."

For claims 8 and 9, a departure from the claims hereafter noted is specially argued, in that a clamping mechanism is more specifically defined. It does not seem to the court that there is distinction involving invention in this feature from Chambers and Bullard, or that other-

wise either of these claims is properly allowable as an acceptable variant of any claim which is in fact sustainable. Our judgment, therefore, is that claims 1, 3, 8, 9, and 10 are invalid.

To the court the gist of the invention appears to be fairly covered by claims 5 and 7. They read as follows:

"5. In combination with a table, a pattern mounted thereon, consisting of a track of the proper shape secured on a base of convenient shape and dimensions and means for holding the sheet metal while being cut, of a carriage mounted upon the table, a frame adjustably mounted upon the carriage and means for cutting the sheet metal carried by the said frame, and guided in its movements by means of the track of the pattern."

"7. In combination with a table having means for holding the piece of sheet metal and a pattern, consisting of a track of the proper shape secured on a base of convenient shape and dimensions, of a carriage, a substantially U-shaped frame slidingly mounted upon said carriage, a cutting mechanism carried by the frame above and below the piece of sheet metal."

What, in our opinion, gives these claims validity, is the inclusion in the combination of the secondary guiding means, which, as we have noted above, distinguishes Scherer from Chambers and Bullard, in that they effect an identity in curves between the pattern track and the resulting cut. In claim 5 this distinction appears in the words "a frame adjustably mounted upon the carriage and means for cutting the sheet metal carried by the said frame, and guided in its movements by means of the track of the pattern," and in claim 7 by the words "frame slidingly mounted upon said carriage, a cutting mechanism carried by the frame above and below the piece of sheet metal."

Claims 2, 4, and 6 appear to be refinements upon 5 and 7, depending for validity upon the theory that they vary 5 and 7 only in developing, in more detail, the one element which, in combination, serves, in the court's judgment, to uphold the grant. We are not disposed to reject any one of these three claims as superfluous, nor to uphold either one as adding anything very substantial to the patent. They are allowed because, being consistent with the two claims (5 and 7) which we deem important, they may serve to more particularly cover the one feature which, as we have said, suggests invention.

[4] We are of the opinion that defendant's machine shown to have been constructed by Holub and Deering infringes the claims which we have approved. The cutters of the infringing machine are, in fact, not positioned as those of Scherer; but, as defendant's counsel describe them, they—

"extend about eight inches beyond the track toward the clamp holding the sheet to be cut, overhanging cutters. It has a track not corresponding to the pattern to be cut, but constituting a templet to develop one curve from another. The cutters are mounted on a gibway, not to keep them over the track, but to produce the variations from the track line which develop the desired irregular curve."

This, in our judgment, is an arrangement which is not sufficient to avoid equivalency. In order to get away from Scherer, defendant provides that one distortion of the Scherer mechanism shall compensate the effect of another, so that the result shall be precisely what Scherer accomplishes.

Defendant's second machine, shown to have been constructed after the specification of Chambers and Bullard is found not to infringe.

Counterclaims on the Chambers and Bullard grant (assigned to defendant) were pleaded in the answer and denied in the decree below. No appeal was prosecuted by the defendant, and no question in that connection was presented in argument to us. We notice the matter briefly, that it may be settled so far as this record is concerned. The cross-claims are so far distinct from the issues raised in the bill that a reversal affecting plaintiff's claim does not warrant the court to disregard the decree below against the defendant, in the absence of an appeal therefrom.

Thus considering and limiting the claims found valid, it follows that the court below should be reversed to the extent that it holds Scherer's patent, No. 729,964, void. Conformably to our practice (Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 112 C. C. A. 185; Higgin Manufacturing Co. v. Watson [C. C. A.] 263 Fed. 378), plaintiff is privileged to disclose to the court below, within 30 days from the filing of the mandate herein or such further time as the District Court may allow, that claims 1, 3, 8, 9 and 10, of Scherer, No. 729,964, which we find invalid, have been abandoned, whereupon a decree of injunction may be entered in behalf of plaintiff conformable to this opinion, and such further proceedings may be had, at plaintiff's instance, as the pleadings justify.

Plaintiff will recover costs in this court.

## On Petition for Rehearing.

PER CURIAM. [5] In support of its petition, defendant appellee contends that plaintiff can obtain no relief under the decision of this court, for the reasons that certain of the patent claims sued upon have been, by this court, pronounced invalid; that up to the time of this court's decision, plaintiff had not filed disclaimer as to the invalid claims; and that, the patent having now expired, it is too late to so disclaim. We think this contention not maintainable. Failure to file disclaimer before suit is begun affects, necessarily, only the costs in the court below. It has no relation to the costs in this court. R. S. § 973 (U. S. Comp. St. § 1614); Johnson v. Foos Mfg. Co. (C. C. A. 6) 141 Fed. 73, 89, 72 C. C. A. 105. The District Court denied costs to plaintiff. So far as substantial relief is concerned, disclaimer before suit brought is not essential. The only requirement is that there be no unreasonable neglect or delay in entering disclaimer. R. S. §§ 4917, 4922 (U. S. Comp. St. §§ 9462, 9468). It is well established that a disclaimer as to part of a patent, in good faith relied upon as valid, is effective, if made after the final decision and as a condition to granting relief. In such case, "unreasonable delay to file a disclaimer will not begin until that question is finally settled by the courts." Walker on Patents (5th Ed.) p. 272. This court recognizes that rule. Herman v. Youngstown, 191 Fed. 579, 587, 588, 112 C. C. A. 185.

[6] Had our decision been made and disclaimer entered previous to the expiration of the patent, no question could arise as to the pro-

priety of giving relief upon such disclaimer. In our opinion, the case is not altered by the fact that at the time our decision was actually made the patent had expired. The case was submitted to this court several months before the expiration of the patent. Until our decision was rendered, complainant was not bound to disclaim as to features of the patent which he was contending were valid and as to which he was awaiting the decision of this court; delay pending our decision was not unreasonable. The statute does not imperatively forbid relief unless disclaimer is made while the patent is still alive. Yale Lock Co. v. Sargent, 117 U. S. 536, 554, 6 Sup. Ct. 934, 29 L. Ed. 954. The fact that the District Court held the patent in suit invalid does not, in our opinion, distinguish it from Yale v. Sargent. Had plaintiff disclaimed immediately upon the decision below, it would have lost its right to the relief which this court gave it. Page v. Dow (C. C. A. 2), 168 Fed. 703, 94 C. C. A. 209; Mershon v. Bay City Co. (C. C.) 189 Fed. 741, 753. (It appears that disclaimer has actually been entered, apparently since our decision.)

[7] Of course, injunction cannot issue upon an expired patent, and our order and mandate will be modified to that extent only.

The other grounds advanced in support of the petition for rehearing require no specific mention.

The petition is denied.